UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JACQUELINE KAY ZIMA, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:20-CV-486 JD |

**OPINION AND ORDER**

**A.     Factual Background**

In December 2016, Ms. Zima applied for Supplemental Security Income, claiming that, by July 2010, she had become unable to work due to her health conditions. (R. 185, 210.) She primarily alleged that she was disabled due to asthma, depression, head injury, diabetes, hip going out frequently, difficulty standing due to prior broken ankles, and mental problems. (R. 210.) She also alleged that "everything [had been] broken from [the] waist down in [a] car accident." (R. 210.)

On April 8, 2019, after reviewing Ms. Zima's medical records and listening to her testimony at the hearing, the ALJ found that she was not disabled. (R. 22.) The ALJ determined that Ms. Zima suffers from multiple severe impairments, including a right ankle fracture with degenerative joint disease, fracture of the hip with osteoarthritis, degenerative joint disease of the left knee, obesity, depressive disorder, mild neurocognitive disorder, and post-traumatic stress disorder. (R. 12.) However, the ALJ found that Ms. Zima's diabetes mellitus, asthma, and history of alcohol and cocaine use were not severe impairments. (R. 13.) The ALJ then found that none of these impairments or combination of impairments was equal in severity to the impairments

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13.) After reviewing the record and listening to Ms. Zima at the hearing, the ALJ concluded that she had the residual functional capacity for light work as defined in 20 C.F.R § 416.967(b), except for the following limitations:

> Stand/walk for 4 hours in an 8-hour workday; occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally work at unprotected heights; and occasionally be exposed to extreme cold and humidity. Due to moderate limits in concentration, persistence, or pace, the claimant can understand, remember and carryout simple, routine tasks; is able to interact with supervisors frequently; is able to interact with coworkers occasionally; is able to interact with the public occasionally; and is able to be exposed to no more than occasional changes in work setting.

(R. 15.) Determining that Ms. Zima could perform other work that exists in significant numbers in the national economy, the ALJ found that Ms. Zima was not disabled. (R. 21–22.) Ms. Zima requested a review by the Appeals Council, which was denied on April 13, 2020, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. See 42 U.S.C. § 405(g).

**B.**   **Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the

disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### C.     Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

D.   **Discussion**

Ms. Zima argues that the ALJ's decision should be remanded for several reasons. First, she argues that the ALJ used cherry-picked evidence. (DE 13 at 2.) Second, she argues that the ALJ failed to "properly consider whether Plaintiff's conditions [met] Listing 1.02 or 1.03" and

4

failed to "properly consider medical equivalence," which made his findings at Step 3 "unsupported." (DE 13 at 8.) Third, she argues that the ultimate decision by the ALJ was unsupported because he failed to provide an accurate picture of the RFC to the vocational expert and she should have been found disabled under the vocational guidelines. (DE 13 at 19.) Fourth, Ms. Zima argues that the RFC was unsupported and lacked a logical bridge. (DE 13 at 3.) Even though Ms. Zima asserts multiple reasons why the RFC was unsupported and lacked a logical bridge, her most convincing argument is that the ALJ erred in his assessment of consultative examiner Dr. Gupta. Since the Court finds Ms. Zima's argument concerning the assessment of Dr. Gupta to be the most persuasive, it will not address the remaining arguments, which will either be moot or can be addressed on remand.

The ALJ considered two examinations of Ms. Zima by Dr. Gupta, who was a State medical consultant for the agency. (R. 20.) One of these examinations occurred in January 2017. (R. 368.) The other examination occurred at the request of the ALJ in February 2019 (R. 493., 299–300), after the hearing with Ms. Zima in January 2019. (R. 36.) In the 2017 examination, Dr. Gupta observed that Ms. Zima's back had "no spinous or paraspinal tenderness in any region. There is full range of motion in lumbar, cervical and thoracic region." (R. 370.) As to her legs, Dr. Gupta did not note any tenderness and found that "[t]here [was] full range of motion . . . ." (R. 370.) Dr. Gupta concluded in his medical source statement that "claimant is able to do work related activities such as sitting, standing, walking, lifting, carrying and handling objects." (R. 370.) In the 2019 examination, however, Dr. Gupta found that her back now displayed signs of "spinous and paraspinal tenderness in the lumbar region and decreased range of motion." (R. 495.) Dr. Gupta also noted that Ms. Zima was complaining for the first time "of arthritis [in her lower back] that has not been diagnosed." (R. 493.) As to her legs, he found that "there [was]

5

pain and tenderness in [the] left hip with decreased range of motion." (R. 495.) Dr. Gupta now concluded that sedentary limitations were justified because Ms. Zima was "unable to do work related activities such as sitting, standing, walking, or lifting." (R. 496.)

The ALJ determined that Dr. Gupta's January 2017 medical source statement was vague and only attributed "some weight" to it. (R. 20.) The ALJ also only gave "some weight" to Dr. Gupta's 2019 opinion because the ALJ believed that sedentary limitations were "unsupported," writing that:

> Dr. Gupta specifically cites lower back pain in each of the categories for which he assigns limitations; a total of seven times (generally along with left hip pain, which is supported, but not to this degree). However, there are no allegations of back pain or imaging to support lumbar limits. Sedentary limits are not consistent with his findings on exam, the rest of the medical evidence of record, or the other medical opinions.

(R. 20.)

In determining Ms. Zima's RFC, the ALJ also considered opinions from three State agency medical consultants. (R. 19.) The first State agency medical consultant examined Ms. Zima in 2014 and found that she had the ability to perform a range of light work. (R. 19, 99.) The ALJ noted that while it was remote, he gave the opinion "some weight" because it was generally consistent with her limitations since her accident. (R. 19.) The other two State agency medical consultants reviewed the medical record, but did not examine Ms. Zima in person when drawing their conclusions. In February 2017, a State agency medical consultant determined that Plaintiff remained capable of a range of medium work, but the ALJ gave this opinion "little weight" because it was not consistent with subsequent evidence. (R. 19, 72.) The ALJ also considered the opinion of the State agency medical consultant who reviewed the record in August 2017 and opined that Plaintiff was capable of a range of light work, which the ALJ gave "some weight." (R. 19, 86.)

The rejection of an agency's doctor supporting a "disability finding is 'unusual' and 'can

6

be expected to cause a reviewing court to take notice and await a good explanation.'" *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). When an ALJ rejects an agency doctor's finding, a good explanation is deserved because the agency's own doctor is "unlikely . . . to exaggerate an applicant's disability." *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013). An agency's examiner is employed by the "state agency that works with the Social Security Administration" and so there is no reason to think that sympathy should affect their judgment during an examination. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

Ms. Zima argues that the ALJ failed to provide a good explanation for rejecting the opinion of the Agency's own examining physician when it concluded that Dr. Gupta's findings were unsupported. (DE 13 at 4.) First, Ms. Zima asserts that Dr. Gupta's conclusion concerning sedentary limitations was, in fact, supported because it was "[b]ased on his examinations of Plaintiff, and [his] exam findings correspond to the limitations he opined." (DE 13 at 4.) Second, Ms. Zima asserts that the ALJ "erred in failing to explain what other evidence Dr. Gupta's 2019 was purportedly inconsistent with." (DE 13 at 4.)

The Commissioner argues in response that the ALJ's reasons for "rejecting the sedentary restrictions in the opinion, are supported by substantial evidence." (DE 18 at 11.) The Commissioner claims "there [was] no evidence establishing that Plaintiff has a medically determinable impairment of the lumbar spine" because "there [were] no allegations of back pain or imaging to support lumbar limits." (DE 18 at 11.) The Court agrees with Ms. Zima that the ALJ failed to provide a good explanation for rejecting the opinion of Dr. Gupta regarding Ms. Zima's sedentary limitations.

7

A medically determinable impairment does not require diagnostic imaging. The Social Security Regulations require that impairments "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(b). "[M]edically acceptable clinical and laboratory diagnostic techniques" include "evidence of *reduced joint motion*, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2). Dr. Gupta found that there was reduced motion as well as tenderness in Ms. Zima's lumbar and left hip, which was objective evidence substantiating his finding of sedentary limitations. Therefore, the fact that there was not imaging does not constitute a good explanation for discounting Dr. Gupta's conclusion.

The Commissioner also argues that the ALJ properly rejected Dr. Gupta's conclusion recommending sedentary limitations because "Plaintiff had not alleged back pain" previously and because the ALJ determined it was inconsistent with Dr. Gupta's "findings on [the] exam, the rest of the medical evidence of record, or the other medical opinions." (R. 20.) Medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)). But the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

The Court finds that the ALJ failed to provide a logical bridge when he rejected Dr. Gupta's findings regarding Ms. Zima's sedentary limitations and that such a conclusion was

8

unsupported by substantial evidence. First, the ALJ never explained how Dr. Gupta's finding of a sedentary limitation is inconsistent with his own examination. As mentioned above, Dr. Gupta found that Ms. Zima's lumbar had a limited range of motion, which was a new symptom. (R. 496.) He also found that there was now pain and tenderness in her left hip with a decreased range of motion. (R. 496.) Lastly, he found that Ms. Zima's gait had changed, so that she was now unable to stoop and unable to walk heel to toe and tandemly. (R. 496.) It's unclear to the Court why Dr. Gupta's conclusion recommending a sedentary limitation is inconsistent with these findings.

Second, the Court believes that the opinions given by the State agency experts were not a proper basis for discounting Dr. Gupta's findings in 2019. Dr. Gupta recorded *new* symptoms in his 2019 examination, including limited back mobility, back tenderness, limited left hip mobility, and left hip tenderness. (R. 495.) ALJs "should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion*." Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (finding that an ALJ improperly ascribed less weight to a doctor's assessment "because it bear[ed] directly on criteria" the other consultative doctors considered); *see Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) (finding that there was substantial evidence supporting an ALJ's decision to give less weight to a doctor's opinion where "the later records corroborating this condition [did not] necessarily undermine his conclusions."). Here, Dr. Gupta's examination found new limitations on Ms. Zima's mobility, including in her lumbar and in her hips, as well as an inability to stoop completely or heel to toe or tandem walk. (R. 495.) There was only one State agency consultant who physically examined Ms. Zima besides Dr. Gupta, and that examination occurred in 2014. (R. 99.). This was five years before Ms. Zima even alleged that

she believed she had arthritis in her back. The other two State agency medical consultants reviewed the record in 2017. (R. 72, 86.) Because this was prior to Dr. Gupta's 2019 examination, they clearly did not have an opportunity to review these new findings when writing their opinions, and the conclusions about Ms. Zima's limited mobility would have likely borne directly on their conclusions. Therefore, discounting Dr. Gupta's findings because of these opinions was improper.

Third, the bare assertion by the ALJ that the medical record is inconsistent with Dr. Gupta's conclusion supporting a sedentary limitation is not the type of "specific, legitimate reasons" constituting good cause required to accord less weight to medical evidence and opinion. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). The ALJ also should not be interpreting medical records to discount a medical professional's expert opinion. *Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) ("Without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment.")

Rather than Dr. Gupta's finding of a sedentary limitation being inconsistent with the record, the ALJ's true concern appears to be a lack of corroboration for the lumbar limitation in the record. (R. 20 ("There are no allegations of back pain or imaging to support lumbar limits.").) However, if the ALJ needed to seek "additional information to flesh out" the details regarding Ms. Zima's lumbar limitation, then it was incumbent on him to solicit additional information. *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). In *Barnett v. Barnhart*, the Seventh Circuit was faced with an ALJ who improperly determined that a doctor's opinion was inconsistent with the record of past treatment. *Id.* The court wrote that if "the ALJ's real concern was the lack of backup support for [the Doctor's] opinion, the ALJ had a mechanism to rectify

the problem." *Id.* The ALJ had a "duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Id.* (quoting 20 C.F.R. § 404.1527(c)(3); *Smith v. Apfel*, 231 F.3d 433, 437–38 (7th Cir. 2000) (finding that the ALJ's duty to develop the record included soliciting updated medical records when the ALJ did not afford the treating doctor's opinion controlling weight on that basis). Here, too, the ALJ had a duty to seek out more information if he believed there was a lack of backup support for Dr. Gupta's medical findings.

The ALJ's rejection of Dr. Gupta's medical opinion concerning Ms. Zima's sedentary limitations, as well as Ms. Zima's new symptoms of lumbar tenderness and limited mobility, indicate that the ALJ failed to consider the full extent of Ms. Zima's problems and their limiting effects. *See Denton v. Astrue*, 596 F.3d 419, 425 (noting that the ALJ cannot ignore evidence that supports a disability finding). If the ALJ believed that Dr. Gupta's medical finding lacked support, he should have sought out more information instead of rejecting Dr. Gupta's conclusions. The ALJ's error in this respect requires remand because the ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," based upon all of the relevant evidence in the record, even the findings of Dr. Gupta in his 2019 examination. The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). However, the ALJ's opinion in this case does not reflect his consideration of the relevant evidence and it fails to provide a logical bridge from the actual evidence to the ALJ's RFC assessment.

11

### E.     Conclusion

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 16, 2021

                                                    /s/ JON E. DEGUILIO  
                                                  Chief Judge  
                                                  United States District Court